IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LEROY MORRIS and <br> (2) GLENDA MORRIS, <br><br> Plaintiffs, <br><br> vs. <br><br> (1) OKLAHOMA DEPARTMENT OF <br> HUMAN SERVICES, State of Oklahoma, <br> ex rel., HOWARD H. HENDRICK, <br> Director of Oklahoma Department of <br> Human Services; <br> (2) OKLAHOMA HEALTH CARE <br> AUTHORITY, State of Oklahoma, ex rel., <br> MIKE FOGARTY, <br> Director of Oklahoma Health Care <br> Authority, <br><br> Defendants. | No. CIV-09-1357-C |

**MEMORANDUM OPINION AND ORDER**

Defendant Oklahoma Department of Human Services ("DHS") denied Plaintiff Mrs. Morris Medicaid benefits after it determined that her financial resources exceed the eligibility requirement. Plaintiffs Mr. and Mrs. Morris filed the present suit under 42 U.S.C. § 1983 seeking declaratory and injunctive relief that DHS's denial of benefits was wrongful and is preempted by federal law. Plaintiffs and Defendants then each filed the present Motions for Summary Judgment claiming entitlement to judgment as a matter of law.

I.  BACKGROUND

On March 26, 2008, Plaintiff Mrs. Morris applied for Medicaid benefits for in-home care under the Advantage Waiver Program.[1]  (Pls.' Compl., Dkt. No. 1, at 3.)  As of her application date, Mr. and Mrs. Morris's assets equaled $107,812, excluding exempt property under the Social Security Act.  (Id.)  DHS determined that in order to qualify for Medicaid, Mrs. Morris needed to spend down her $53,906 spousal share to $2,000.  (Id. at 3–4.)

Thereafter, Mrs. Morris purchased two irrevocable burial contracts worth $15,000, spent $4,000 in legal fees, and on April 1, 2008, Mr. Morris purchased an irrevocable annuity for $41,000.[2]  (Id.)  Mr. Morris's commercial annuity (Annuity), issued by Old Mutual Life Insurance, named the State of Oklahoma as a remainder beneficiary.  The Annuity is nontransferable, nonassignable, noncommutable, nonsurrenderable, and irrevocable.  (Id. Exh. 2.)  All parties agree the Annuity is actuarially sound—it pays Mr. Morris $1,140.47 per month for three years and Mr. Morris's life expectancy is eight years.  (Id. at 2, 4; Pls.' Br., Dkt. No. 23, Exh. 1, at 2.)

DHS denied Plaintiff Mrs. Morris's claim for Medicaid after finding that the Annuity exceeded the Community Spouse Resource Allowance (CSRA) under 42 U.S.C. § 1396r-

---

[1] Plaintiffs' Complaint states Plaintiff Mrs. Morris applied for Medicaid on this date, while Defendants assert Plaintiffs sent a request for assessment of income and resources that DHS then treated as an application for Medicaid benefits.  (Defs.' Answer, Dkt. No. 11, at 3.)

[2] Plaintiffs' briefs and pleadings do not consistently establish who purchased the Annuity. In Plaintiffs' Complaint, Mr. Morris purchased the Annuity.  In Plaintiffs' Motion for Summary Judgment, "the Plaintiffs purchased . . . and used $41,000 to buy an annuity for Mr. Morris."  (Pls.' Compl., Dkt. No. 1, at 4; Pls.' Br., Dkt. No. 23, at 3.)

5,September 24, 2010 that the purchase of the Annuity resulted in a transfer penalty under § 1396p(c)(1) and (2), and that the Annuity's income stream could be sold in a secondary market making it a countable asset. (Id. at 5.) Plaintiffs requested and received a DHS hearing reviewing the denial of Plaintiff's benefits. DHS affirmed that denial. (Id. at 4–5.) The parties essentially dispute whether the § 1396r-5 determination of spousal shares prevents the community spouse from purchasing an annuity above that spousal share, and whether § 1396p(c)(1) penalties apply.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over civil actions arising under the Constitution or federal law. Jurisdiction is proper under § 1331 as Plaintiffs' cause of action requires this Court to interpret the "spousal impoverishment" provisions in the Medicare Catastrophic Coverage Act of 1988. 42 U.S.C. § 1983 establishes a private cause of action when a plaintiff is deprived of a right secured by the Constitution or laws of the United States. § 1983; Blessing v. Freestone, 520 U.S. 329, 341 (1997). "[T]he primary question in determining whether a statute will support a claim under § 1983 is whether 'Congress intended to confer individual rights upon a class of beneficiaries.'" Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002)). Neither party in this case raised a § 1983 issue, and since "[t]he question whether a cause of action exists is not a question of jurisdiction, [it] therefore may be assumed without being decided." Burks v. Lasker, 441 U.S. 471, 476 n.5 (1979); see also Mandy R. ex rel. Mr. & Mrs. R. v. Owens, 464 F.3d 1139, 1143 (10th Cir.

2006) ("[T]he district court did not clearly decide whether this portion of the [Medicaid] statute creates a federal right enforceable under § 1983, but the parties have not disputed the point. We therefore assume without deciding that § 1983 gives the plaintiffs a right of action . . . .").

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986). A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

If the moving party meets its initial burden, the nonmoving party must then set out "specific facts" sufficient to show a genuine issue of fact for trial. Fed. R. Civ. P. 56(e). Summary judgment is appropriate if, after adequate time for discovery and upon motion, the nonmoving party fails to sufficiently establish the existence of an essential element to their case that they bear the burden of proving at trial. Celotex, 477 U.S. at 322.

## III. DISCUSSION

Medicaid is a cooperative federal-state program authorized under Title XIX of the Social Security Act of 1965, designed to provide financial assistance for medical treatment to "needy persons." Wis. Dep't of Health & Family Servs. v. Blumer, 534 U.S. 472, 479 (2002); 42 U.S.C. § 1396 et seq. States participating in this federally funded program develop eligibility plans that must be consistent with, and no more restrictive than, specified federal guidelines. 42 U.S.C. § 1396a(r)(2)(A), (B); Houghton ex rel. Houghton v. Reinertson, 382 F.3d 1162, 1165 (10th Cir. 2004). When formulating eligibility standards, states must "'provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant.'" Blumer, 534 U.S. at 479 (emphasis omitted) (quoting § 1396a(a)(17)(B)). The Oklahoma Health Care Authority is responsible for implementing the Medicaid program for the State of Oklahoma. 63 Okla. Stat. § 5009. Determining the availability of a couple's resources and income to the spouse applying for Medicaid has long eluded a simple solution. Blumer, 534 U.S. at 479. Often, the nonapplying spouse's individually held resources were the most troublesome in this determination. See id. at 479–80.

The "spousal impoverishment" provisions of the Medicare Catastrophic Coverage Act of 1988 (MCCA) allow a spouse (called the "institutionalized spouse") to receive institutional, or equivalent in-home treatment, Medicaid support while maintaining certain income and resources for the spouse living at home (called the "community spouse"). § 1396r-5(h). Prior to the enactment of the MCCA, a couple's jointly held assets were

5

combined, totaled, and considered when determining the institutionalized spouse's Medicaid eligibility, but assets held solely by the community spouse were not considered. Blumer, 534 U.S. at 479–80. This method produced the undesired results of wealthy community spouses sheltering assets while couples who jointly held property had to dispose of that property in order to meet the eligibility requirements. Id. at 480. Congress enacted the MCCA to address this undesired result, and to "protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance."[3] Id. (quoting H.R. Rep. No. 100-105, pt. 2, at 65 (1987)).

The parties do not dispute the relevant facts, so the determinative issue for summary judgment is whether § 1396r-5 prohibits the community spouse from purchasing, after an initial determination of eligibility, an annuity above that spouse's share, and whether § 1396p(c)(1) penalties apply to that transfer. In order to determine this issue, this Court begins with the language of the statute.

---

[3] Specifically, Congress described the Medicaid requirements and the MCCA's purpose as:

> [A] means-tested entitlement program, requir[ing] that the elderly or disabled nursing home resident be poor in order to qualify for coverage. [The MCCA] also limits the income that an institutionalized spouse may make available for the spouse remaining in the community. . . . The purpose of the Committee bill is to end this pauperization by assuring that the community spouse has a sufficient—but not excessive—amount of income and resources available to her while her spouse is in a nursing home at Medicaid expense.

H.R. Rep. No. 100-105, pt. 2, at 65 (1987), *reprinted in* 1988 U.S.C.C.A.N. 857, 888.

Importantly, the first provision of 42 U.S.C. § 1396r-5 states: "In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them." § 1396r-5(a)(1). Section 1396r-5(a)(3) goes on to provide that except when specifically provided for, the supersession clause does not apply to "the determination of what constitutes income or resources, or the methodology and standards for determining and evaluating income and resources." § 1396r-5(a)(3).

The community spouse's income is governed by § 1396r-5(b) and (d), while § 1396r-5(c) and (f) address the allocation of resources. § 1396r-5(b), (d), (c), (f). The community spouse's resources above the spousal share, but not that spouse's income, are considered available to the institutionalized spouse when applying for Medicaid. § 1396r-5(b)(1), (c)(2). Both spouses' resources, regardless of the nature of the property interest, are combined, totaled, and then divided in half with one half attributed to each spouse. § 1396r-5(c). Community spouses are allowed to keep their one-half share of the total resources, referred to as the "Community Spouse Resource Allowance" or "CSRA," but institutionalized spouses must spend down their share to $2,000 in order to qualify for Medicaid. Id.; 20 C.F.R. § 416.1205 (2010).

Plaintiffs claim the purchase of the Annuity in an amount above Mr. Morris's CSRA limit is appropriate under the § 1396p(c)(2)(B)(ii) spousal transfer exception, which allows an exception to Medicaid ineligibility when transfers of assets to another were made for the

7

sole benefit of the community spouse. § 1396p(c)(2)(B)(i), (ii). However, Plaintiffs' interpretation would render § 1396r-5's limitation on the community spouse's resources superfluous. Section 1396r-5(c) outlines the procedure for determining each spouse's share of the couple's total resources and the availability of those resources to the institutionalized spouse. Plaintiffs' interpretation would read § 1396r-5 to limit the amount of resources the community spouse may keep, but allow an unlimited transfer of resources into "income" for the community spouse under § 1396p(c). Plaintiffs cite James v. Richman as support for Mr. Morris's transfer of assets to an annuity, but Plaintiffs' reliance is misplaced: Plaintiffs transferred assets into an annuity after applying for Medicaid, while the community spouse in James purchased the annuity before the institutionalized spouse applied for Medicaid. James ex rel. James v. Richman, 465 F. Supp. 2d 395, 399 (M.D. Pa. 2006), aff'd, 547 F.3d 214 (3rd Cir. 2008); (Pls.' Compl., Dkt. No. 1, at 3–4). In fact, most of the Medicaid applicants in Plaintiffs' cited cases purchased the annuity before applying for Medicaid.[4]

If resources that were attributed to the institutionalized spouse under § 1396r-5 were allowed to be transferred, after an initial determination of eligibility, to the community

---

[4] See Estate of F.K. v. Div. of Med. Assistance & Health Servs., 863 A.2d 1065, 1067–68 (N.J. Super. Ct. App. Div. 2005) (buying and fully funding the annuity by June 11, 2001, and applying for Medicaid on July 25, 2001); Mertz ex rel. Mertz v. Houstoun, 155 F. Supp. 2d 415, 418 (E.D. Pa. 2001) (purchasing the annuity on November 29, 1999, and applying for Medicaid on March 31, 2000); Weatherbee ex rel. Vecchio v. Richman, 595 F. Supp. 2d 607, 608 (W.D. Pa. 2009) (buying the annuity on November 29, 2006, and applying for Medicaid on February 28, 2007), aff'd, 351 F. App'x 786 (3rd Cir. 2009). Even if Plaintiffs had transferred their assets into an annuity for Mr. Morris before applying for Medicaid, this Court would find that the limitations imposed on and division of assets determined in § 1396r-5 limit transfers of assets under the § 1396p(c) exceptions above the CSRA once it is determined.

8

spouse, § 1396p(c)'s exception would allow Medicaid applicants to recharacterize resources, which are deemed available to the institutionalized spouse, into the community spouse's income, which is not deemed available to the institutionalized spouse.[5] This reading renders the limitation provisions in § 1396r-5 toothless, and undermines the spousal impoverishment provisions' purpose of eliminating the community spouse's ability to retain assets in excess of the spousal allowance. See Burkholder v. Lumpkin, No. 3:09CV01878, 2010 WL 522843, at *3–6 (N.D. Ohio Feb. 9, 2010). If an institutionalized spouse can "spend down" that spouse's share by transmogrifying spousal share resources into community-spouse income, the provisions dividing and limiting the spousal resources are superfluous. "As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 837 (1988); Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment."), superseded by statute, Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, 104 Stat. 2865, as recognized in Johnson v. Home State Bank, 501 U.S. 78, 83 (1991). See also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 113–14 (2001), and Johnson v. Guhl, 357 F.3d 403, 405 (3d Cir. 2004) ("Because Medicaid is available only to the needy, creative lawyers and financial planners have devised various ways to 'shield' wealthier claimants' assets in

---

[5] Under § 1396p(c)(1)(G)(ii), regarding transfer of assets, assets does not include an annuity that is irrevocable and nonassignable, actuarially sound, and provides for payments in equal amounts during the term of the annuity with no deferral and no balloon payments made.

9

determining Medicaid eligibility."). Additionally, since § 1396r-5(a) mandates that any conflict between § 1396r-5 and the other provisions in this subchapter be resolved in the former's favor, the conflict between these provisions must be read to favor § 1396r-5.

Plaintiffs next rely on the Centers for Medicare and Medicaid Services' (CMS) publication interpreting the effects of purchasing an actuarially sound annuity and the transfer-penalty provisions' applicability to the spousal impoverishment provisions as support for Mr. Morris's purchase of the Annuity. Normally, even if a transfer may not be penalized under § 1396p(c)(2), if it is above the community spouse's CSRA, it would still be considered available to the institutionalized spouse when determining Medicaid eligibility. However, when resources are converted into income for the community spouse, via the purchase of an annuity, that income is no longer deemed available to the institutionalized spouse. Plaintiffs claim this loophole is acknowledged and condoned by the CMS in its State Medicaid Manual. The pertinent language states:

> The exceptions to the transfer of assets penalties regarding interspousal transfers and transfers to a third party for the sole benefit of a spouse apply even under the spousal impoverishment provisions. Thus, the institutional spouse can transfer unlimited assets to the community spouse or to a third party for the sole benefit of the community spouse.
>
> When transfers between spouses are involved, the unlimited transfer exception should have little effect on the eligibility determination, primarily because resources belonging to both spouses are combined in determining eligibility for the institutionalized spouse. Thus, resources transferred to a community spouse are still [to] be considered available to the institutionalized spouse for eligibility purposes.
>
> The exception for transfers to a third party for the sole benefit of the spouse may have greater impact on eligibility because resources may

10

> potentially be placed beyond the reach of either spouse and thus not be counted for eligibility purposes. However, for the exception to be applicable, the definition of what is for the sole benefit of the spouse (see §3257) must be fully met. This definition is fairly restrictive, in that it requires that any funds transferred be spent for the benefit of the spouse within a time-frame actuarially commensurate with the spouse[']s life expectancy. If this requirement is not met, the exemption is void, and a transfer to a third party may then be subject to a transfer penalty.

Health Care Fin. Admin., U.S. Dep't of Health & Human Servs., State Medicaid Manual § 3258.11 (1994), available at http://www.cms.gov/Manuals/PBM/itemdetail.asp?filterType=none&filterByDID=-99&sortByDID=1&sortOrder=ascending&itemID=CMS021927 (commonly referred to as "Transmittal 64"). The Centers for Medicare and Medicaid Services—prior to June 2001, the Health Care Financing Administration—is the branch of the Department of Health and Human Services that oversees the administration of the Medicaid program. See Notices, 66 Fed. Reg. 35437-03 (Dep't of Health & Human Servs. July 5, 2001).

Plaintiffs' interpretation of the above language as authority for purchasing an annuity as a method of spending down the institutionalized spouse's resource allowance misconstrues the context of this Transmittal. While the first quoted paragraph ostensibly allows an unlimited transfer between the community spouse and institutionalized spouse, the second and third quoted paragraphs restrict the effect this "permission" seemingly grants.

Specifically, the second paragraph places these transfers in a pre-eligibility determination context by asserting that transfers would have little influence on the determination eligibility and "[t]hus, resources transferred to a community spouse [would]

still be considered available to the institutionalized spouse for eligibility purposes." This language envisions the transfer occurring before the determination of eligibility, when the transfer would have little impact on eligibility since the couple's total resources are combined and deemed available, when above the CSRA, to the institutionalized spouse when determining that spouse's Medicaid eligibility.

Additionally, the third quoted paragraph, in its penultimate sentence, restrains these transfers further by referencing the "restrictive" standards a transfer must endure to fit within the § 1396p(c) exceptions. Given this larger context, and the deference due an agency's interpretation when the statutory language is clear,[6] this Court is not persuaded that Transmittal 64 condones transfers of resources, originally allotted to the institutionalized spouse under § 1396r-5, into income for the community spouse above that community spouse's resource allowance, nor is this Court persuaded that even if Transmittal 64 did condone these transfers that it would be entitled to great deference given the statutory clarity of § 1396r-5.

---

[6] When determining the degree of deference given an agency's statutory interpretation, if congressional intent is clear, then the court must "give effect to the unambiguously expressed intent of Congress," but if Congress has not directly addressed the issue, a court should not "impose its own construction on the statute." If the statute is silent or ambiguous the court must determine "whether the agency's answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984). "[S]tatutory '[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference . . . [but] are 'entitled to respect' . . . to the extent that those interpretations have the 'power to persuade.'" Via Christi Reg'l Med. Ctr., Inc. v. Leavitt, 509 F.3d 1259, 1272 (10th Cir. 2007) (quoting Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000), and Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

The parties also dispute the relevance and application of § 1396r-5(f), which states:

> An institutionalized spouse may, without regard to section 1396p(c)(1) of this title, transfer an amount equal to the community spouse resource allowance (as defined in paragraph (2)), but only to the extent the resources of the institutionalized spouse are transferred to (or for the sole benefit of) the community spouse. The transfer under the preceding sentence shall be made as soon as practicable after the date of the initial determination of eligibility, taking into account such time as may be necessary to obtain a court order under paragraph (3).

Although this Court tends to agree with Plaintiffs that § 1396r-5(f)(1) applies to post-eligibility transfers, this provision's restriction on the amount an institutionalized spouse may transfer to a community spouse further supports that the CSRA was intended to be a ceiling on the community spouse's resources during and after the eligibility determination. However, since this Court does not use § 1396r-5(f) as the basis for limiting transfers over the CSRA, the dispute as to this specific provision is moot.

Plaintiffs' final claim of federal preemption fails for not specifying which state law is preempted. Plaintiffs' statement in their Complaint that "Defendant OKDHS has to the detriment of Plaintiffs, violated and continues to violate the Supremacy Clause of the United States Constitution by determining that Plaintiff, Glenda Morris, is ineligible for Medicaid under Oklahoma laws pertaining to annuities that are in direct conflict with the federal laws pertaining to annuities," is insufficient to establish a preemption claim. (Pls.' Compl., Dkt. No. 1, at 7–8). See Dalton v. Little Rock Family Planning Services, 516 U.S. 474, (1996) ("In a pre-emption case such as this, state law is displaced only 'to the extent that it actually conflicts with federal law.'" (quoting Pacific Gas & Elec. Co. v. State Energy Resources

Conservation & Dev. Comm'n, 461 U.S. 190, 204 (1983))). This Court could find no citation to the specific state law or regulation Plaintiffs assert is preempted by federal law.

Since there is no dispute as to the material facts and both Mrs. Morris's purchase of the Annuity for Mr. Morris, which would be in excess of Mr. Morris's spousal allowance and limited under § 1396r-5, and Mr. Morris's purchase of the Annuity for himself, which would leave Mrs. Morris yet to spend down her spousal share, would leave Mrs. Morris with excess resources, it was not in error for DHS to deny Plaintiff Mrs. Morris's application for Medicaid.[7]

Accordingly, Plaintiffs' Motion for Summary Judgment (Dkt. No. 23) is DENIED, and Defendants' Motion for Summary Judgment (Dkt. No. 24) is GRANTED. All other pending motions are STRICKEN as moot. A judgment shall enter accordingly.

IT IS SO ORDERED this 24th day of September, 2010.

ROBIN J. CAUTHRON
United States District Judge

---

[7] See supra note 2 and accompanying text for an explanation of this discrepancy in the facts.